UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                           :
ANYELA SALAZAR, ANEL HERNANDEZ,                            :
ROBERT ENMANUEL EMILIANO, and                             :
CAROLINA PICHARDO                                          :
                                                           :        21-cv-11028 (PAC)
                                        *Plaintiffs*,      :
                                                           :
        *-against-*                                        :        **OPINION & ORDER**
                                                           :
BIJA 203 INC. and DARIO OLEAGA,                            :
                                                           :
                                        *Defendants*.      :
-----------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs Anyela Salazar, Anel Hernandez, Robert Enmanuel Emiliano, and Carolina Pichardo are former employees of Cocina Taller, a restaurant in New York City. In January 2020, Plaintiffs obtained a default judgment against 203 Lena, Inc. ("Lena"), the then-owner of Cocina Taller, for violations of federal and state labor law. Shortly after the judgment was entered, but before Plaintiffs executed it, Cocina Taller was sold to Defendant Bija 203 Inc. ("Bija"). Bija did not pay any money to purchase Cocina Taller. Rather, it agreed to assume "Seller's debt." Plaintiffs now sue Bija to enforce the judgment (1) by voiding the transfer of the restaurant under New York Debtor and Creditor Law ("NY DCL") § 273, and (2) holding Bija liable as Lena's successor under federal and state common law.

Both parties move for summary judgment under Federal Rule of Civil Procedure 56 on the successor liability claim and Bija seeks summary judgment on the voidable transfer claim. The Court **GRANTS** Plaintiffs' motion for summary judgment and **DENIES** Bija's motion for summary judgment.

1

## BACKGROUND

I.   **The Underlying Judgement in the "Wage Case"**

The following facts are undisputed unless otherwise noted.  Plaintiffs Anyela Salazar, Anel Hernandez, Robert Enmanuel Emiliano, and Carolina Pichardo (the "Former Employees") worked as waiters at Cocina Taller, a restaurant located at 416 West 203rd Street, New York, New York 10034.  Pls.' Ex. C ¶ II(a), ECF No. 57-3.  On October 4, 2016, the Former Employees sued 203 Lena Inc. and Dario Oleaga[1] in the Southern District of New York, alleging that they violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by failing to pay the statutory minimum wage rate and overtime, provide spread-of-hours pay, and furnish annual wage notices and weekly wage statements (the "Wage Case").  Pls.' Ex. A at 3, ECF No. 57-1; Pls.' Ex. B at 10–15, ECF No. 57-2.

At the time the Former Employees brought the Wage Case, Cocina Taller was owned and operated by Lena, a New York corporation.  Pls.' Ex. C ¶ II(a).  On August 16, 2017, Lena filed for Chapter 11 bankruptcy.  Pls.' Ex. D at 1, ECF No. 57-4.  An affidavit describing Lena's finances and business was submitted in support of the bankruptcy petition.  Pls.' Ex. E, ECF No. 57-5.  The affidavit explains that "[Lena's] immediate need for relief in this Court stems from a claim under the Federal Labor Standard Act that is being pursued in the Southern District of New York which will result in serious cash flow difficulties that will not allow the Debtor to continue to operate its business."  *Id.* ¶ 6.  In a disclosure filed in the bankruptcy proceeding almost a year later, Lena again specifically cited the Wage Case as the event that precipitated the bankruptcy petition.  Pls.' Ex. C ¶ II(d).

---

[1] The Former Employees also sued Pedro Abel, but he was dismissed from the action.  Pls.' Ex. A at 12–13.

The Wage Case was stayed for almost two years while Lena's bankruptcy proceeded.  On

May 17, 2019, the Hon. Vincent L. Briccetti lifted the stay after the bankruptcy petition was

voluntarily dismissed.  Pls.' Ex. A at 8.  After continued noncompliance with the court's orders,

on December 3, 2019, the court ordered that Lena and Mr. Oleaga show cause as to why it should

not enter default judgment in favor of the Former Employees.  *Id.* at 11.  Neither Mr. Oleaga nor

an attorney for Lena appeared at the hearing to show cause on January 3, 2020.  Pls.' Ex. F, ECF

No. 57-6.  In an order entered that day, Judge Briccetti concluded that the Former Employees had

sufficiently established liability and therefore entered default judgment against Lena and Mr.

Oleaga.  *Id.*  Mr. Oleaga unsuccessfully moved to vacate the default judgment.  *Salazar v. 203

Lena Inc.*, No. 16-cv-7743, 2020 WL 2489070, at *2, 5 (S.D.N.Y. May 14, 2020).  Later, on

October 22, 2020, Plaintiffs were awarded $167,772.15, plus post-judgment interest, as damages.

*Salazar v. 203 Lena Inc.*, No. 16-cv-7743, 2020 WL 6257158, at *2 (S.D.N.Y. Oct. 23, 2020).

## II.    The Initial Steps of Transferring Cocina Taller & Incorporating Bija 203 Inc.

Around the same time that the default judgment was entered in the Wage Case, in late 2019

or early 2020, Danny Moronta was told "in passing" at a "cocktail event" of an opportunity to

purchase Cocina Taller.  Pls.' Ex. J ("Moronta Dep.") at 13:13–14:6, ECF No. 57-10; Decl. Danny

Moronta ("Moronta Decl.") ¶ 4, ECF No. 51.  In approximately January 2020, Mr. Moronta

"reached out" to the person whom he understood to be the "current owner" of Cocina Taller,

Poryelina Rosario,[2] to show his "interest" in the restaurant.  *Id.* at 14:10–15:11.  During Mr.

Moronta's discussions with Ms. Rosario, he did not ask her why she wanted to sell Cocina Taller.

---

[2] The parties dispute whether Ms. Rosario is the sole owner and officer of Lena or whether Mr. Oleaga also has ownership and officer responsibilities.  The Court does not address this factual dispute, however, because the fact is immaterial to resolving the instant motions.

3

Moronta Decl. ¶ 8; Moronta Dep. at 17:11–18:24.

After speaking to Ms. Rosario about Cocina Taller, Mr. Moronta incorporated Bija under New York law on May 6, 2020. Pls.' Ex. I, ECF No. 57-9; Moronta Decl. ¶ 14. Mr. Moronta is the President and sole owner and officer of Bija. Pls.' Ex. K Interrogs. 3–5, ECF No. 57-11; Ex. L Def.'s Interrog. Resps. 3–5, ECF No. 57-12.

## III. The Agreement

Mr. Moronta (on behalf of Bija) and Ms. Rosario (on behalf of Lena) reached an agreement for Bija's acquisition of Cocina Taller in June 2020. Def.'s Ex. A, ECF No. 50-1 (the "Agreement"). Under the Agreement, Lena agreed "to sell, transfer and deliver to Purchaser [i.e., Bija], and Purchaser agrees to purchase, upon the terms and conditions hereinafter set forth, all of the assets (other than cash, certificates of deposit, securities, cash equivalents and accounts receivable) of the business," including equipment, furniture, fixtures, improvements, the lease, and the goodwill of the business. *Id.* § 1. In exchange, the "purchase price will be the assumption of Sellers [sic] debt." *Id.* § 2. This section goes on to explain that the "Seller also states that the Assets are sold subject to the following debt outlined in Exhibit A-4. The Buyer buys the Assets subject to the above debt and agrees to pay all the debt. The Buyer also agrees to indemnify and hold the Seller harmless from any claim from any failure by the Buyer to pay off this debt." *Id.* § 2. Finally, the "**debts will include all New York State & Federal taxes, vendors, utility companies and landlord arrears from July 16, 2013 until July 1, 2020.**" *Id.* (emphasis in original). The parties agree that although Exhibit A-4 was not included with the final Agreement, Mr. Moronta did not recall asking Ms. Rosario to quantify or list Lena's "debt." Def.'s Resp. Pls.' Rule 56.1 Statement Material Facts ¶¶ 21, 23, ECF No. 61 ("Def.'s Resp. SOF"); Moronta Dep. at 64:6–9, 68:3–69:7. He testified that he believed the debt was approximately "over $300,000," Moronta

4

Dep. at 28:13–19, but the Former Employees dispute that he knew that at the time he entered the Agreement, Pls.' Resp. Def.'s Rule 56.1 Statement Material Facts ¶ 6, ECF No. 64 ("Pls.' Resp. SOF"). The assumption of debt was the sole consideration Bija provided for the purchase of Cocina Taller. Moronta Dep. at 67:18–22.

## IV.    This Action to Enforce the Judgement

On December 23, 2021, the Former Employees filed this action, asserting two claims against Bija and Mr. Oleaga. Compl., ECF No. 1. Mr. Oleaga was subsequently dismissed from this case on March 16, 2023. Order, ECF No. 49. The Former Employees first ask to void the transfer of Cocina Taller to Bija pursuant to NY DCL § 273. Compl. ¶¶ 50–53. Second, they rely on successor liability theories under New York common law and federal common law to hold Bija liable for the default judgment entered against Lena and Mr. Oleaga in the Wage Case. *Id.* ¶¶ 55–56.[3]

Bija now moves for summary judgment under Federal Rule of Civil Procedure 56 on the voidable transfer claim. The Former Employees and Bija cross-move for summary judgment on the successor liability claim.

---

[3] This Court has subject matter jurisdiction over the first claim because the Former Employees seek to collect a federal judgment by tracing the assets of a defendant of the judgment to a third party, which falls within the ancillary jurisdiction of the Court. *See, e.g., Kim v. Yoo*, No. 15-cv-3110, 2016 WL 258642, at *4 (S.D.N.Y. Jan. 20, 2016), *aff'd sub nom. Tae H. Kim v. Ji Sung Yoo*, 776 F. App'x 16 (2d Cir. 2019). There is also subject matter jurisdiction over the second claim because the Former Employees rely on federal common law to claim Bija is liable as a successor of Lena's FLSA and state labor law violations. *Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc.*, 235 F.3d 53, 59 n.2 (2d Cir. 2000) ("Since we conclude that this case arises under federal common law, federal jurisdiction over this case is properly based on 28 U.S.C. § 1331, which 'support[s] claims founded upon federal common law as well as those of a statutory origin.'") (alteration in original) (citation omitted)).

## DISCUSSION

### I.   Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Summary judgment is warranted where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The movant bears the burden of demonstrating the absence of any genuine dispute of material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party." *Roberts v. Genting New York LLC*, 68 F.4th 81, 88 (2d Cir. 2023) (alteration in original). "Rather, the court evaluates each party's motion 'on its own merits,' and 'all reasonable inferences' are drawn 'against the party whose motion is under consideration.'" *Id.* (quoting *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)). In moving for summary judgment against a party who will bear the burden of proof at trial, the movant may satisfy its burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim. *Celotex*, 477 U.S. at 323–24.

### II.   Voidable Transfer

Bija moves for summary judgment on the Former Employees' first claim, which seeks to void the transfer of Cocina Taller. A cause of action for voidable transfer traces the assets of a

debtor to a third party to allow the creditor to reach the debtor's assets without holding the third party liable. *See, e.g.*, *Kim*, 2016 WL 258642, at \*4. The Former Employees bring this claim pursuant to NY DCL § 273, which permits a creditor to void an improper transfer without a showing of fraudulent intent. Instead, a creditor must show that "the debtor made the transfer or incurred the obligation . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation," and the debtor "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction." NY DCL § 273(a)(2), (2)(ii); *see also id.* § 272 (defining "value").

Bija has not met its burden to demonstrate that it is entitled to summary judgment on this claim. Bija argues: (1) that the Former Employees have failed to show actual intent to defraud a creditor, Mem. Law Supp. Def.'s Mot. Summ. J. 7, ECF No. 52 ("Def.'s Mot."), and (2) that the transfer was made with "fair consideration" (as defined by a repealed version of § 272), Mem. Law Reply Pls.' Opp'n Def's Mot. Summ. J. 6, ECF No. 65.

But Bija's arguments rest on a misapprehension of the applicable law. Notably, New York's fraudulent conveyance statute was amended in December 2019 to align it with the other states that have adopted the Uniform Voidable Transactions Act. N.Y. Debt. & Cred. Law § Ch. 12, art. 10, Refs & Annos. In particular, subjective intent and good faith are no longer relevant to the Former Employees' particular claim. The New York Legislature indeed replaced the previous requirement that a conveyance be made with a lack of "fair consideration," which creditors could satisfy by showing a lack of "good faith." *Id.* The Act thus eliminates the possibility that the creditor may void a conveyance on the ground that the transfer was not made in good faith even though the debtor received reasonably equivalent value. *Id.* The Court uses the amended version of the law because it applies to "transfers made or obligations incurred on or after the April 4, 2020

effective date," *id.*, and there is no dispute that Bija and Lena executed the Agreement in June 2020. Because Bija does not argue that it is entitled to summary judgment under applicable law, its motion is denied.

## III.   Successor Liability

The Former Employees and Bija cross-moved for summary judgment on the successor liability claim. The Former Employees seek to hold Bija liable as a successor of Lena under two theories: (1) the New York common law test; and (2) the federal common law "substantial continuity test." Pls.' Mem. Law Supp. Mot. Summ. J. 6, ECF No. 56 ("Pls.' Mot."). Bija asks the Court to apply the New York common law test but argues that the successor liability claim fails under either of these theories. Mem. Law Opp'n Pls.' Mot. Summ. J. 3–4, 7, ECF No. 62 ("Def.'s Opp'n"); Def.'s Mot. 2.

### A.  New York Common Law Test

Under the New York common law test, "a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006). "[A] buyer of a corporation's assets will be liable as its successor," however, when certain exceptions apply, including where the buyer "expressly or impliedly assumed the predecessor's tort liability." *Id.* (citing *Schumacher v. Richards Shear Co.*, 451 N.E.2d 195, 198 (N.Y. 1983)). An assumption of tort liability may be shown by evidence of "an express or implied agreement to assume the other company's debts and obligations." *Am. Buying Ins. Servs., Inc. v. S. Kornreich & Sons, Inc.*, 944 F. Supp. 240, 249 (S.D.N.Y. 1996).

The Former Employees argue that this exception applies. Pointing to the Agreement, they argue that Bija expressly agreed to assume all of Lena's debt in exchange for the restaurant. Pls.' Mot. 6–8. Whether Bija is liable as a successor thus becomes a question of contract interpretation.

8

Although the parties dispute the meaning of the contract, there are no disputes of fact related to the contract itself.

The fundamental principle of contract interpretation under New York law is that the Court must "ascertain the parties' intent," *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993), and the "terms of an agreement provide the best evidence of what the parties intend," *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019). "[A] written agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms." *Id.* (brackets omitted). Whether the agreement is clear and unambiguous is a "question of law for the court to decide." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000). Only if the agreement is ambiguous may the Court consider evidence extrinsic to the contract itself. *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792, 804 (2d Cir. 2023). A contract is unambiguous "if it has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Electra v. 59 Murray Enterprises, Inc.*, 987 F.3d 233, 245 (2d Cir. 2021).

Here, the plain and unambiguous terms of the Agreement control. The first sentence of the relevant section unequivocally states that the "purchase price will be the assumption of Sellers [sic] debt." The parties disagree as to the meaning of "Sellers' debt" in context of this sentence and the agreement as a whole. The term "debt" is not explicitly defined in the Agreement. So, the Court must interpret the terms such that "words and phrases are given their plain meaning." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir. 2000) (brackets omitted). "Debt" is commonly understood to refer to all liability and claims asserted against a party, even if those claims have not been reduced to a particular money amount. *See, e.g.*, Black's Law Dictionary

(11th ed. 2019) ("Liability on a claim; a specific sum of money due by agreement or otherwise," or "[t]he aggregate of all existing claims against a person, entity, or state").

Defendant contends, however, that the final sentence of this section of the Agreement, which reads that the "debts will include all New York State & Federal taxes, vendors, utility companies and landlord arrears from July 16, 2013 until July 1, 2020," limits its assumption of Lena's debt to only those items in the list. Def.'s Opp'n 5–6. But the phrase "will include" is not typically one of limitation. A list that begins with "include" or "including" is understood to comprise of a non-exhaustive list of examples unless there is evidence to the contrary. *See Paguirigan v. Prompt Nursing Emp. Agency, LLC*, 827 F. App'x 116, 122 (2d Cir. 2020) (noting that a non-exhaustive list would typically use phrases like "including" or "for example").

Bija cites, *Freeman v. Complex Computing Co.*, 931 F. Supp. 1115 (S.D.N.Y. 1996), *aff'd in part and rev'd in part on other grounds*, 119 F.3d 1044 (2d Cir. 1997), in support of its argument that the Agreement's express reference to assumption of specific debts impliedly excludes all other debt not listed. Def.'s Opp'n 6. Bija's reliance on *Freeman* is misplaced because, in that case, there was no issue of implied exclusion. The agreement expressly provided that the successor "shall *not assume*, and [the former entity] *expressly retains* liability for, the following" list of liabilities and obligations except for "those provided for in Schedule 1.1(v) of the Agreement." *Id.* at 1121 (emphasis added). No such provision expressly limits Bija's debt in the Agreement. Moreover, "it is a cardinal rule of contract construction that an agreement should be interpreted to give meaning and effect to each of its provisions," *Levine v. 860 W. Tower, Inc.*, No. 96-cv-6124 (LAP), 1999 WL 185270, at *4 (S.D.N.Y. Mar. 31, 1999), and understanding this sentence as a list of examples gives effect to other portions of the Agreement. In particular, the Agreement reads that "[t]he Seller *also* states that the Assets are sold subject to the following debt outlined in Exhibit

A-4." Agreement § 2 (emphasis added).  Although it is undisputed that Exhibit A-4 was not attached to the Agreement, the parties clearly intended to include the Exhibit as an expression of the debt in addition to—"also"—what is listed elsewhere.  Thus, the best way to harmonize both sentences is to understand each sentence as providing specific non-exclusive examples of debt.

Bija also argues that Lena warrantied in the Agreement that there was no litigation pending against Lena, so it could not have assumed any debt arising out of tort liability.  Def.'s Opp'n 6. The warranty ("Representations and Warranties of Seller") provides, *inter alia*, that "Seller represents and warrants to Purchaser as follows: . . . [t]here are no judgments, liens, suits, actions or proceedings pending against Seller or the Assets."  Agreement § 8(e).  But what Ms. Rosario (on behalf of Lena) warrantied to Mr. Moronta (on behalf of Bija) is a separate issue.  That warranty governs the relationship between Lena and Bija; it does not dictate Bija's assumption of debt as it relates to third parties of the business.  As such, whether that warranty was actually accurate is something Bija may take up with Lena.  *See, e.g., LaSalle Bank Nat. Ass'n v. Merrill Lynch Mortg. Lending, Inc.*, No. 04-cv-5452, 2007 WL 2324052, at *8 (S.D.N.Y. Aug. 13, 2007) (setting out the elements of a breach-of-warranty claim and explaining that "[u]pon such a showing, 'plaintiff is entitled to be indemnified for any damages incurred as a result of such breach'" (quoting *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999))).[4]

---

[4] Because Bija explicitly assumed all debt against Lena at the time the contract was entered, it assumed debt related to the Wage Case.  And Bija does not argue that the plain meaning of the term debt does not include a determined liability for which no definite monetary amount had been entered.  Although the court did not render a decision regarding the exact damages until October 22, 2020, after the Agreement was executed, the court had entered a final judgment finding Lena liable for the wage violations on January 3, 2020—prior to the execution of the Agreement. Importantly, Lena faced the potential for liability arising from the Wage Case for almost four years before the Agreement.  Even Lena acknowledged the potential impact that case could have on the business.  Documents filed in the bankruptcy proceeding in August 2017 and June 2018

As Lena's successor under the New York common law test, Bija is liable to the Former Employees for the judgment in the Wage Case. The Court therefore grants the Former Employees' motion for summary judgment on this ground.[5]

## B. The Substantial Continuity Test

### 1. The Test's Place in Federal Common Law

The substantial continuity test is a federal common law standard for successor liability that the Supreme Court has endorsed when enforcing violations of the National Labor Relations Act and the Labor Management Relations Act. *See Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 176 (1973); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 548–51 (1964). That test is typically viewed as broader than the traditional state common law test. *See, e.g.*, *Xue Ming Wang v. Abumi Sushi Inc.*, 262 F. Supp. 3d 81, 89 (S.D.N.Y. 2017). The Second Circuit has not endorsed the substantial continuity test over the state common law test for FLSA claims. *See, e.g.*, *Li v. New Ichiro Sushi Inc.*, No. 20-1783-CV, 2021 WL 6105491, at *2 (2d Cir. Dec. 21, 2021)

---

specifically identified the Wage Case as the event leading to filing for bankruptcy. Pls.' Ex. C ¶ II(d); Pls.' Ex. E ¶ 6, ECF No. 57-5.

[5] The Former Employees cite a third theory in support of successor liability. However, their reliance on New York Labor Law § 218(5) is questionable, and the Court declines to apply it. The standard in § 218(5) is for deeming "[a]n employer similar in operation and ownership to a prior employer . . . the same employer for the purposes of this section." However, "this section" and that standard applies to enforcement actions brought by the Commissioner of the New York Department of Labor, and the Court is not aware of any case (nor did the Former Employees cite any) finding that § 218(5) should be used to evaluate this type of private civil claim. *See, e.g.*, *Mabe v. Wal-Mart Assocs., Inc.*, No. 20-cv-00591, 2022 WL 874311, at *4 (N.D.N.Y. Mar. 24, 2022) ("Labor Law § 218 also provides for administrative enforcement . . . by the Commissioner of the Department of Labor. The statute empowers the Commissioner to grant affected employees restitution and liquidated damages in addition to imposing civil penalties." (quoting and discussing *Konkur v. Utica Acad. of Sci. Charter Sch.*, 185 N.E.3d 483, 485 (N.Y. 2022)). Indeed, the Former Employees concede that the Court need not address the question of Bija's liability under this "novel successor liability analysis." Pls.' Reply Supp. Mot. Summ. J. 8, ECF No. 66.

(declining to decide the issue).   Nonetheless, it recently observed that the doctrine of successor

liability is "part of the labor law context in which successor liability originates, and into which it

can be carefully yet confidently extended." *New York State Teamsters Conf. Pension & Ret. Fund

v. C&S Wholesale Grocers, Inc.*, 24 F.4th 163, 181 (2d Cir. 2022).   Indeed, a number of circuit

courts and courts within this District have applied the substantial continuity test to determine a

successor's liability for a predecessor's violation of the FLSA.   *See, e.g.*, *Thompson v. Real Est.

Mortg. Network*, 748 F.3d 142, 151 (3d Cir. 2014) (adopting this standard and noting the Seventh

and Ninth Circuits have too); *Bautista v. Beyond Thai Kitchen, Inc.*, No. 14-cv-4335, 2015 WL

5459737, at \*3 (S.D.N.Y. Sept. 17, 2015) (collecting cases applying the standard within the

Southern District of New York).   These courts reason that "application of the federal standard to

claims under the FLSA is the logical extension of existing case law" that aims to fulfill the remedial

and protective goals of various federal labor and employment statutes.   *See Thompson*, 748 F.3d

at 151; *see also Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir. 1995).   Without successor

liability under the FLSA, "a violator of the Act could escape liability, or at least make relief much

more difficult to obtain, by selling its assets without an assumption of liabilities by the buyer (for

such an assumption would reduce the purchase price by imposing a cost on the buyer) and then

dissolving." *Teed v. Thomas & Betts Power Sols., L.L.C.*, 711 F.3d 763, 766 (7th Cir. 2013)

(Posner, J.).   At the same time, "[t]he successor will have been compensated for bearing the

liabilities by paying less for the assets it's buying; it will have paid less because the net value of

the assets will have been diminished by the associated liabilities." *Id.* at 766–67.

The Court agrees with the rationale of these decisions and will do the same because the

Former Employees brought claims under the FLSA in addition to their state law claims.

2. *Factors in the Substantial Continuity Test*

In this context, the substantial continuity test consists of the following nine factors:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

*Bautista*, 2015 WL 5459737, at *5. In application, most courts within this District view the first two factors—notice and the ability of the predecessor to provide relief—to be "more significant," if not "indispensable." *See Diaz v. Slayton One Cleaner Inc.*, No. 17-cv-1311-LTS-KNF, 2018 WL 4935831, at *6 (S.D.N.Y. Oct. 11, 2018); *Ji Li v. New Ichiro Sushi, Inc.*, No. 14-cv-10242-AJN, 2020 WL 2094095, at *4 (S.D.N.Y. Apr. 30, 2020), *aff'd sub nom. Li*, No. 20-1783-CV, 2021 WL 6105491 (2d Cir. Dec. 21, 2021).

3. *Application*

Applying those factors here, the Court holds that the Former Employees are entitled to summary judgment on their federal common law claim for successor liability.

First, the Former Employees must prove that Bija had actual or constructive notice. *Bautista*, 2015 WL 5459737, at *7. The record demonstrates that Bija was on, at a minimum, constructive notice of Lena's FLSA liabilities. To show constructive notice, the plaintiff "must point to the existence of certain 'red flags'—such as a suspiciously good deal or other relevant facts—that would have put a reasonable buyer on notice that it should have conducted further inquiries.'" *Hidalgo v. New Ichiro Sushi, Inc.*, No. 15-cv-414, 2017 WL 4712789, at *12

14

(S.D.N.Y. Sept. 27, 2017); *Bautista*, WL 5459737, at *8 (concluding there was constructive notice because of the uncharacteristically quick closing and suspiciously low purchase price).  There were numerous red flags here.  Bija's assumption of Lena's debt was the purchase price.  However, Mr. Moronta could not recall taking steps to understand the scope or details of Lena's debt despite being presented with various opportunities and reasons to do so.  He testified that he asked Ms. Rosario what debt Lena had and that she told him "they had debt."  Pls.' Ex. J at 68:10–1.  But he could not recall asking for the exact amount of money owed.  *Id.* at 68:13–16.  Similarly, the Agreement explicitly states that the "Assets are sold subject to the following debt outlined in Exhibit A-4," but Mr. Moronta could not recall Exhibit A-4 existing when he signed the Agreement, nor did he recall seeing documents prior to his acquisition about how much debt Lena had.  *Id.* at 64:6–9, 66:22–25.  And when Mr. Moronta was asked why he agreed to purchase Cocina Taller in exchange for Lena's debt without knowing the amount, he explained that he was "willing to take the chance" that he was not "getting [himself] into an enormous amount of debt."  *Id.* at 68:17–69:7.  That the Agreement included a general warranty that "no judgments, liens, suits, actions or proceedings [were] pending against Seller or the Assets" does not absolve the impact of the other red flags that should have alerted Bija to investigate further.  *Cf. Diaz*, 2018 WL 4935831, at *5 (declining to find constructive notice in part because there was a warranty clause providing assurances but also because plaintiff pointed to "*no* attributes of the sale that would have reasonably alerted" buyers (emphasis added)).  Importantly, Bija has not argued that, at the time Mr. Moronta and Ms. Rosario reached the Agreement, it was because of that warranty clause that Mr. Moronta did not ask additional questions.  Under these circumstances, where the debt of the seller is the entire consideration paid for the transfer, these circumstances are red flags sufficient to conclude that Bija had constructive notice.

Moreover, though the contract does not specifically provide notice of "FLSA liability," Bija purchased that debt, and it would run counter to the very purpose of successor liability to *not* honor the parties' freedom to contract. "'Successor liability is an equitable doctrine, not an inflexible command,' and thus 'emphasis on the facts of each case as it arises is especially appropriate.'" *Li*, 2021 WL 6105491, at *2 (first quoting *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995); and then quoting *Howard Johnson Co. v. Detroit Loc. Joint Exec. Bd.*, 417 U.S. 249, 256 (1974)). Thus, that a central term of the Agreement required Bija's assumption of Lena's debt also supports that it had notice.

Second, the Former Employees have shown that it cannot recover from Lena, the predecessor. While courts in this District have required a weighty showing as to this factor, *Abumi Sushi*, 262 F. Supp. 3d at 92, 95, the Former Employees have satisfied it. In particular, as the Former Employees argue, any effort to enforce the judgment against Lena would be futile because Lena does not have any assets. Pls.' Mot. 15. In support, they cite a document filed in the bankruptcy case that states that all of Lena's assets were Cocina Taller's assets. Pls.' Ex. C at "Exhibit B: Value of Debtors' Assets." Because Cocina Taller's assets have been transferred to Bija, they argue that the company is basically an empty shell. Bija's evidence to the contrary is unavailing. Bija states that according to an undated screenshot of the New York State Department's Division of Corporation's website, Lena remains an "active" entity. Def.'s Ex. I, ECF No. 50-9. But the "active" status of the entity is of no moment because Lena does not actually engage in any business, and the website page does not indicate whether Lena remains assetless.[6]

---

[6] Bija also argues that the Former Employees had to show that they could not enforce the judgment against Ms. Rosario or Mr. Oleaga. Def.'s Opp'n 11–12. Bija's argument would essentially require plaintiffs to show that they cannot pierce the corporate veil to find for the plaintiffs on this

Pls.' Resp. SOF ¶ 3. Different from other cases where a seller sells its assets but receives money in return for the buyer's purchase, which counsels against finding that the seller cannot provide relief, *e.g.*, *Abumi Sushi*, 262 F. Supp. 3d at 95, Lena did not receive any money in exchange for Bija's purchase. The record supports that Lena would have no ability to provide relief.

Finally, the remaining factors probe "whether the new business has sufficient 'continuity in operations and work force of' the previous business to qualify as its successor." *Ji Li*, 2020 WL 2094095, at *4 (quoting *Thompson*, 748 F.3d at 151). The undisputed evidence offered for these factors, except for one, weighs in favor of successor liability. When Bija took over Cocina Taller, it continued to operate using the same premises with the same restaurant design and the same name (i.e., the same "plant"). Moranata Dep. at 39:8–18. In at least the early stages of Bija's ownership, it used the same workforce, which allowed the restaurant to remain open and permitted substantial continuity of the business operations during the transition. *Id.* at 37:13–38:4, 34:17–25. Similarly, Bija used the same "methods of production" to sell the same "product" because the menu consisted of substantially the same items made by the same cooks using the same equipment. *Id.* at 38:21– 39:2, 82:5–83:10, 59:8–12. Moreover, Bija continues to use the same website, Instagram page, and phone number. *Id.* at 80:24–82:4, 23:20–24:7. The only factor that cuts against finding liability is that the business did not use the same "supervisory personnel" because Cocina Taller promoted someone to become the manager and because Mr. Moronta assumes managerial responsibilities. Def.'s Resp. SOF ¶ 27. However, even the new manager is someone who worked

---

factor. Successor liability and corporate veil-piercing are complementary doctrines. *See e.g.*, *In re Emoral, Inc.*, 740 F.3d 875, 881 (3d Cir. 2014) ("Just as the purpose behind piercing the corporate veil, . . . the purpose of successor liability is to promote equity and avoid unfairness."). But a creditor must satisfy a "heavy burden" to pierce the corporate veil, *TNS Holdings, Inc. v. MKI Sec. Corp.*, 703 N.E.2d 749, 751 (N.Y. 1998), and Bija cites no authority that requires a plaintiff to try to pierce the corporate veil prior to finding successor liability.

at Cocina Taller under the previous owner and was promoted because of his experience working at Cocina Taller. Moranata Dep. at 35:11–36:9. In sum, as these factors demonstrate, much stayed the same with the business and its workforce and operations after Bija took over Cocina Taller.

In light of these considerations and the Former Employees' burden, the Court concludes that the Former Employees have demonstrated that Bija was on at least constructive notice of Lena's FLSA liabilities, that Lena could not satisfy the judgment itself, and that there was continuity in the business operations. Accordingly, the Court grants summary judgment in favor of the Former Employees on their federal common law successor liability claim.

## CONCLUSION

For the reasons stated, the Court **DENIES** Bija's motion for summary judgment of both the voidable transfer and successor liability claims. The Court **GRANTS** the Former Employees' motion for summary judgment on the successor liability claim. The Clerk of the Court is directed to close ECF Nos. 50 and 55.

Dated: New York, New York
      September 26, 2023

SO ORDERED

_Paul A. Crotty_
PAUL A. CROTTY
United States District Judge